**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 15-cv-02602-REB-KLM

RED ROBIN INTERNATIONAL, INC.,

    Plaintiff,

v.

LEHIGH VALLEY RESTAURANT GROUP, INC.,
JAMES W. RYAN,
LUCINDA C. LOBACH, and
JOSEPH J. FUSCO, JR.,

    Defendants.

## ORDER CONCERNING MOTION TO DISMISS

**Blackburn, J.**

The matter before me is **Defendants' Motion To Dismiss Plaintiff's Complaint** [#11],[1] filed December 10, 2015. The plaintiff filed a response [#17], and the defendants filed a reply [#20]. I deny the motion in part and grant it in part.

### I. JURISDICTION

I have subject matter jurisdiction of this action under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1332 (diversity of citizenship). In their present motion, the defendants argue this court does not have personal jurisdiction over any of the defendants.

---

[1] "[#11]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

## II.  STANDARD OF REVIEW

The defendants move to dismiss the claims of the plaintiff on the ground that the defendants do not have sufficient minimum contacts with Colorado to warrant the exercise of personal jurisdiction over them in this forum.  The assumption of personal jurisdiction over a non-resident defendant involves a two-step inquiry.  First, the defendant must be amenable to service of process under the forum state's long-arm statute.  *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1056-07(10th Cir. 1995); *Dart International, Inc. v. Interactive Target Systems, Inc.*, 877 F.Supp. 541, 543 (D. Colo. 1995).  Second, the exercise of jurisdiction must comport with due process. *Wenz*, 55 F.3d at 1507; *Custom Vinyl Compounding Inc. v. Bushart & Associates, Inc.*, 810 F.Supp. 285, 287 (D. Colo. 1992).  Because the Colorado long-arm statute extends personal jurisdiction within the state as far as the federal constitutional requirements of due process permit, *Keefe v. Kirschenbaum & Kirschenbaum, P.C.*, 40 P.3d 1267, 1270 (Colo. 2002), the analysis collapses into a single inquiry as to whether the requirements of due process are satisfied.

Due process for jurisdictional purposes consists of two elements.  First, the defendant must have sufficient "minimum contacts" with the forum state.  *International Shoe Co. v. State of Washington, Office of Unemployment Compensation & Placement*, 326 U.S. 310, 316 (1945);  *Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 455 (10th Cir. 1996).  "Minimum contacts" may be analyzed in terms of specific jurisdiction or general jurisdiction.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996).  Specific jurisdiction exists when the contacts of a defendant with the forum state arise from, or are directly related to, the

cause of action of the plaintiff. ***Burger King Corp. v. Rudzewicz***, 471 U.S. 462, 472 (1985); ***Kuenzle***, 102 F.3d at 455. General jurisdiction is proper when the defendant has other "continuous and systematic" contacts with the forum, even if those contacts are unrelated to the pending litigation. ***Helicopteros Nacionales de Columbia***, 466 U.S. at 415; ***Trierweiler***, 90 F.3d at 1533. In a commercial context, if the efforts of a defendant are purposefully directed toward residents of the forum state, courts "have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction" in the forum state. ***Burger King***, 471 U.S. at 476.

Second, if sufficient minimum contacts exist, I then must determine whether the exercise of personal jurisdiction over the non-resident defendant "would comport with 'fair play and substantial justice.'" ***Burger King Corp.***, 471 U.S. at 476 (internal quotation omitted). Stated differently, I must determine whether assuming personal jurisdiction over the defendant is "'reasonable' in light of the circumstances surrounding the case." ***OMI Holdings, Inc. v. Royal Insurance Co. of Canada***, 149 F.3d 1086, 1091 (10th Cir. 1998). Factors relevant to that analysis include

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

***Trujillo v. Williams***, 465 F.3d 1210, 1221 (10th Cir. 2006) (quoting ***Pro Axess, Inc. v. Orlux Distribution, Inc.***, 428 F.3d 1270, 1279-80 (10th Cir. 2005)). "[T]he weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." ***Id.*** (quoting ***Pro Axess***, 428 F.3d at 1280).

I have discretion to resolve the motion on affidavits and other written material.

3

***Behagen v. Amateur Basketball Association***, 744 F.2d 731, 733 (10th Cir. 1984), ***cert. denied***, 471 U.S. 1010 (1985). The plaintiff has the burden to establish a *prima facie* case of personal jurisdiction. ***Id***. I must accept the well-pleaded allegations of the complaint as true. ***Wenz***, 55 F.3d at 1505; ***Behagen***, 744 F.2d at 733. However, the plaintiff has "the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading." ***Pytlik v. Professional Resources, Ltd.***, 887 F.2d 1371, 1376 (10th Cir. 1989).

### III. FACTS

This lawsuit concerns a franchise agreement between the plaintiff, Red Robin International, Inc., and the defendant, Lehigh Valley Restaurant Group, Inc. (LVRG). Having reviewed the motion, response, and reply as well as the affidavits submitted by the parties, I find and conclude that there is no material dispute about any of the facts relevant to the motion.

Effective May 30, 1995, Red Robin, as franchisor, and LVRG, as franchisee, entered into a written franchise agreement concerning the establishment and operation of a Red Robin restaurant in Easton, Pennsylvania. When the franchise agreement became effective, Red Robin was a Nevada corporation headquartered in California. Red Robin alleges that each of the three individual defendants personally guaranteed in writing the obligations of LVRG under the franchise agreement. LVRG is a Pennsylvania corporation with its principal place of business in Allentown, Pennsylvania. Two of the individual defendants are residents of Pennsylvania and one is a resident of Tennessee.

In 1996, Red Robin moved its headquarters to Greenwood Village, Colorado. After that move, the parties executed a second agreement which supersedes, in part, the original franchise agreement. The second agreement was executed in Phoenix, Arizona. The franchise agreement and the second agreement required strict conformity with the Red Robin system, regulated the use of Red Robin trademarks and other intellectual property, and regulated the use of a unique and distinctive design and decor, a trade dress, for Red Robin restaurants. LVRG continued to operate the Easton, Pennsylvania, Red Robin restaurant until the franchise agreement expired on November 26, 2015.

Over the past 19 years, LVRG representatives regularly communicated with corporate representatives of Red Robin in Colorado. LVRG representatives traveled to Colorado at least 75 times to meet with Red Robin Corporate representatives. LVRG submitted royalty, advertising, and other payments to Red Robin at its Colorado headquarters. LVRG representatives attended training at the Colorado headquarters of Red Robin. On multiple occasions, LVRG sent its corporate representatives to Colorado to attend annual franchise update meetings and training sessions. LVRG repeatedly sought from Red Robin support related to information technology, marketing and advertising, accounting, and access to Red Robin recipes by contacting Red Robin at its Colorado headquarters. In the 19 years since Red Robin moved its headquarters to Colorado, LVRG sought from Red Robin at least 20 additional franchises and executed with Red Robin 18 additional franchise agreements.

Under the franchise agreement, Red Robin alleges, a franchisee must take a variety of actions when the franchise agreement is terminated. Among other things, the franchisee must immediately (i) cease to operate its franchised Red Robin restaurant,

(ii) not hold itself out as a present or former Red Robin franchisee, (iii) cease any and all use of any component of the Red Robin System and any of the Red Robin Marks, (iv) de-identify its former franchised Red Robin restaurant to clearly distinguish it from genuine and authorized Red Robin restaurants, (v) return to Red Robin all operations manuals and other materials provided to it by Red Robin relating to the operation of a Red Robin restaurant, and (vi) offer to sell to Red Robin all of its interest in the restaurant and its premises.

Red Robin alleges that LVRG has refused to comply with its post-termination obligations and continues to operate a casual dining restaurant at the same location as its former franchised Red Robin restaurant, to offer the same products and services it previously offered as a Red Robin restaurant, and to use the Red Robin Marks and the Red Robin System while operating the restaurant. Based on the alleged breach by LVRG of its post-termination obligations of the franchise agreement, Red Robin asserts claims for trademark infringement, trade dress infringement, unfair competition, and breach of contract.

## IV.  ANALYSIS

The defendants contend this court may not properly exercise personal jurisdiction over them because they do not have sufficient contacts with the state of Colorado to support the exercise of personal jurisdiction. The opinion of the Supreme Court of the United States in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) provides useful guidance in analyzing the argument of the defendants. In *Burger King*, two residents of Michigan, John Rudzewicz and Brian MacShara, entered into a franchise agreement with Burger King for the operation of a Burger King restaurant in Michigan. Burger King was headquartered in Miami, Florida. The franchise agreement

6

called for payment of all required fees and delivery of all relevant notices to Burger King at its headquarters in Miami. From the Miami headquarters, Burger King set policy and worked directly with franchisees to resolve major problems. Brian MacShara, one of the fanchisees, attended management training in Miami and the franchisees bought restaurant equipment from a division of Burger King in Miami.

Early in the relationship between the franchisees and Burger King, disputes arose between the two. After prolonged negotiations between Burger King officials in Miami and the franchisees, Burger King terminated the franchise. Burger King brought suit against the franchisees in the United States District Court for the Southern District of Florida, invoking the diversity jurisdiction of the court. The franchisees sought dismissal of the case, arguing that the Florida district court did not have personal jurisdiction over them because they both were residents of Michigan and the claims of Burger King did not arise in the Southern District of Florida. The district court concluded it had personal jurisdiction over the franchisees concerning actions arising out of their franchise agreement with Burger King and, ultimately, entered judgment in favor of Burger King. On appeal, the United States Court of Appeals for the Eleventh Circuit held that the nature of the negotiations between Burger King and the franchisees and the circumstances of the franchise itself "left Rudzewicz bereft of reasonable notice and financially unprepared for the prospect of franchise litigation in Florida." **Burger King Corp. v. MacShara**, 724 F.2d 1505, 1513 (11th Cir. 1984). The court held that the exercise of jurisdiction by the Florida district court "would offend the fundamental fairness which is the touchstone of due process." *Id*.

Ultimately, the Supreme Court addressed the issue of personal jurisdiction. The Supreme Court held that the district court properly exercised personal jurisdiction over

the franchisee defendants. ***Burger King***, 471 U.S. at 478. Summarizing the relevant factors, the Court said it is "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing [ ] that must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum." *Id*. at 479. The Court noted that neither of the franchisees had physical ties to Florida, other than the brief Miami training session attended by one of the franchisees. *Id*. Still, the Court observed, this franchise dispute grew directly out of a contract which had a substantial connection with Florida. *Id*. Franchisee John Rudzewicz "deliberately reached out and beyond Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise and the manifold benefits that would derive from affiliation with a nationwide organization." *Id*. at 479 - 480 (internal quotation omitted).

> After approval of the franchise agreement by Burger King, Mr. Rudzewicz entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida. In light of Rudzewicz' voluntary acceptance of the long-term and exacting regulation of his business from Burger King's Miami headquarters, the quality and nature of his relationship to the company in Florida can in no sense be viewed as random, fortuitous, or attenuated. Rudzewicz' refusal to make the contractually required payments in Miami, and his continued use of Burger King's trademarks and confidential business information after his termination, caused foreseeable injuries to the corporation in Florida. For these reasons, it was, at the very least, presumptively reasonable for Rudzewicz to be called to account there for such injuries.

*Id*. at 480 (internal quotation and citations omitted). The Court noted also that the franchise agreement provided that all disputes would be governed by Florida law. *Id*. at 481.

Seeking to distinguish the present case from ***Burger King***, LVRG focuses on the initiation of its long relationship with Red Robin. LVRG notes that, initially, it did not

8

establish a relationship with a Colorado based entity and did not receive notice from the contract documents that it might be subject to suit in Colorado. *Response* [#11], p. 8. Rather, LVRG asserts, it entered into a franchise agreement with a Nevada corporation which was headquartered in California. *Id*. The franchise agreement provides that it shall be interpreted and construed under California law. These statements are true, but they do not present a complete picture of the relevant facts. In 1996, one year after the 20 year franchise for the Easton, Pennsylvania restaurant began, Red Robin moved its headquarters to Greenwood Village, Colorado. Ever since, LVRG has done business with Red Robin knowing Red Robin is headquartered in Colorado. On many occasions over this long span of years, LVRG representatives traveled to Colorado to do business with LVRG concerning LVRG franchise agreements with Red Robin. LVRG routinely submitted royalty, advertising, and other payments to Red Robin in Colorado. As compared to the franchisees in **Burger King**, LVRG has had a relationship with Red Robin which is much longer and which has involved much more physical travel by LVRG to Colorado to conduct franchise business with Red Robin. There is no question that LVRG has been aware, for about 19 years, that it was doing business with an entity based in Colorado.

In contrast to **Burger King**, the Red Robin franchise agreement at issue here does not provide that Colorado law controls any dispute under the contract. That factor augurs against the exercise of personal jurisdiction by this court. However, strikingly similar to **Burger King**, the undisputed facts show that the dispute at issue in this case grows directly from a franchise contract with a substantial connection to Colorado. The course of dealing of the parties during the 20 year life of the agreement included LVRG repeatedly and routinely reaching out to Red Robin, including frequent visits to Red

Robin, in Colorado for the purpose of conducting franchise business. The refusal of LVRG to comply with the termination provisions in the franchise agreement, as alleged in the complaint and if true, has caused and will cause foreseeable injuries to Red Robin in Colorado, at its headquarters. The same was true in *Burger King*. *Id*. at 480.

These contacts between LVRG and Colorado "can in no sense be viewed as random, fortuitous, or attenuated." *Id*. (internal quotation and citations omitted). Under the standards established in *Burger King*, LVRG has sufficient minimum contacts with Colorado to support, at minimum, the exercise of personal jurisdiction, in the form of specific jurisdiction, over LVRG. Applying the same standards, the exercise of personal jurisdiction over LVRG comports with 'fair play and substantial justice.'" *Id*. at 476. Over the course of 19 years, the commercial efforts of LVRG were purposefully directed toward Red Robin, a resident of Colorado at its Colorado headquarters. In this context, the limited physical contacts of LVRG with Colorado do not serve to undermine personal jurisdiction. *Id*. As to LVRG, the motion to dismiss must be denied.

Notably, none of the affidavits submitted by any of the parties show that any of the three individual defendants purposefully directed commercial activity toward Red Robin in Colorado. None of the affidavits tend to show that any of the individual defendants have had any contact with Colorado, whether related to Red Robin or otherwise. Applying the standards established in *Burger King*, I must find and conclude that, as to the three individual defendants, Red Robin has not established a *prima facie* case of personal jurisdiction. **Behagen v. Amateur Basketball Association,** 744 F.2d 731, 733 (10th Cir. 1984), **cert. denied**, 471 U.S. 1010 (1985). As to the three individual defendants, the motion to dismiss must be granted.

## V.  CONCLUSION & ORDERS

The record demonstrates an ample basis for the exercise of personal jurisdiction over defendant Lehigh Valley Restaurant Group, Inc. (LVRG).  As to LVRG, the motion to dismiss is denied.

On the other hand, the record does not demonstrate a basis for the exercise of personal jurisdiction over the three individual defendants named in the complaint.  As to the three individual defendants, Red Robin has not established a *prima facie* case of personal jurisdiction.  As to the three individual defendants, the motion to dismiss must be granted.

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Defendants' Motion To Dismiss Plaintiff's Complaint** [#11], filed December 10, 2015, is denied as to defendant Lehigh Valley Restaurant Group, Inc.;

2. That the **Defendants' Motion To Dismiss Plaintiff's Complaint** [#11], filed December 10, 2015, is granted as to defendants James W. Ryan, Lucinda C. Lobach, and Joseph J. Fusco, Jr.; and

3. That under Fed. R. Civ. P. 12(b)(1), the complaint [#1] is dismissed without prejudice as to defendants James W. Ryan, Lucinda C. Lobach, and Joseph J. Fusco, Jr., and the caption shall be amended accordingly.

Dated February 2, 2016, at Denver, Colorado.

**BY THE COURT:**

*/s/ Bob Blackburn*
Robert E. Blackburn
United States District Judge